IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

ADAM FURGATCH,                     )   CIVIL NO. 11-00363 HG-KSC
                                   )
              Plaintiff,           )
                                   )
       vs.                         )
                                   )
ONEWEST BANK, FSB; DEUTSCHE        )
BANK NATIONAL TRUST COMPANY, as    )
Trustee of the IndyMac INDX        )
Mortgage Trust 2007-AR5,           )
Mortgage Pass-Through             )
Certificates, Series 2007-AR5      )
Under the Pooling and Servicing    )
Agreement Dated March 1, 2007;     )
CHARLES H. BUNDRANT and his        )
wife, DIANE L. BUNDRANT; and       )
DOES 1-100, inclusive,             )
                                   )
              Defendants.          )
_____     )


**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. 77)**


     On June 8, 2011, Plaintiff Adam Furgatch filed a Complaint

asserting a claim against a Property located in Captain Cook,

Hawaii.  Plaintiff demands specific performance of a Purchase

Contract to buy the Property.

     Before the Court is Defendants' Motion for Summary Judgment

(Doc. 77).  The Motion for Summary Judgment is **GRANTED.**


## PROCEDURAL HISTORY

     On June 8, 2011, Plaintiff Adam Furgatch ("Furgatch") filed

a Complaint.  (Doc. 1.)

On May 11, 2012, Defendants OneWest Bank, FSB ("OneWest Bank") and Deutsche Bank National Trust Company, as Trustee of the IndyMac INDX Mortgage Trust 2007-AR5, Mortgage Pass-Through Certificates, Series 2007-AR5 Under the Pooling and Servicing Agreement Dated March 1, 2007 ("Deutsche Bank") filed a Request for Judicial Notice; Exhibits 1-7. (Doc. 53.)

On May 15, 2012, Defendants OneWest Bank and Deutsche Bank filed a Declaration of Charles Boyle (Doc. 55) in support of Defendants' Memorandum in Opposition to Plaintiff's Motion for Leave to File a First Amended Complaint filed on May 11, 2012. (Doc. 51.)  The declaration put forward copies of:  Exhibit A, Purchase Agreement between buyer Adam Furgatch and seller OneWest Services, LLC dated April 4, 2011; Exhibit B, Note executed by lender IndyMac Bank and borrower Holly Reese dated February 6, 2007; Exhibit C, "Notice to Perform" from OneWest Bank to Adam Furgatch dated May 2, 2011 and "Cancellation of Escrow" from OneWest Bank dated May 5, 2011.  (Exhibits to Defendants' Memorandum of 5/11/12, Doc. 55.)

On May 29, 2012, Plaintiff filed a First Amended Complaint ("FAC").  (Doc. 62.)  The FAC added Charles and Diane Bundrant as defendants ("Bundrant Defendants").

On June 8, 2012, Defendants OneWest Bank and Deutsche Bank filed an Answer to Plaintiff's First Amended Complaint.  (Doc. 67.)

2

On August 8, 2012, Defendants OneWest Bank and Deutsche Bank filed a Motion for Summary Judgment, in which the Bundrants joined. (Doc. 77.) Defendants filed a separate concise statement of facts in support ("Defendants' Motion for Summary Judgment SCSF"). (Doc. 80.) Defendants request that the attachments filed on May 15, 2012, (Doc. 55), in support of the Defendants' Memorandum of May 11, 2012, (Doc. 51), be made part of the attachments in support of the Motion for Summary Judgment without refiling.

On September 4, 2012, Plaintiff Furgatch filed an Opposition to Defendants' Motion for Summary Judgment ("Opposition"). (Doc. 87.) Plaintiff filed a separate concise statement of facts in support ("Plaintiff's SCSF"). (Doc. 88.) Plaintiff's SCSF is not an acceptance or denial of Defendants' concise statement of facts as required by Local Rule 56.1(b).

On October 2, 2012, Defendants OneWest Bank and Deutsche Bank filed a Reply, in which the Bundrants joined. (Doc. 98.)

On October 25, 2012, the Court granted Defendants OneWest Bank and Deutsche Bank's Request for Judicial Notice (Doc. 53) of the following documents: Exhibit 1, Mortgage Agreement between borrower Holly Reese and lender IndyMac Bank dated February 6, 2007; Exhibit 2, Assignment of Mortgage from IndyMac Bank to Deutsche Bank recorded on October 26, 2010; Exhibit 3, Deutsche Bank's Notice of Mortgagee's Intention to Foreclose Under Power

3

of Sale recorded on November 3, 2010; Exhibit 4, Deutsche Bank's
Mortgagee's Affidavit of Foreclosure Under Power of Sale; Exhibit
5, Mortgagee's Quitclaim Deed Pursuant to Power of Sale
transferring the Property to Deutsche Bank recorded on March 14,
2011; Exhibit 6, Limited Power of Attorney between Deutsche Bank
and OneWest Bank recorded on January 18, 2011; Exhibit 7, Limited
Warranty Deed transferring the Property from Deutsche Bank to the
Bundrants recorded on June 7, 2011.

On October 25, 2012, the Court took judicial notice of the
parties' correct names, holding that Defendants shall be referred
to as OneWest Bank, FSB and Deutsche Bank National Trust Company,
as Trustee of the IndyMac INDX Mortgage Trust 2007-AR5, Mortgage
Pass-Through Certificates, Series 2007-AR5 Under the Pooling
Servicing Agreement Dated March 1, 2007.  (Doc. 105.)

On October 23, 2012, Plaintiff filed a document entitled
"Supplemental Declaration of Adam Furgatch."  (Doc. 103.)

On October 30, 2012, Defendants OneWest Bank and Deutsche
Bank filed an Objection to the Supplemental Declaration of Adam
Furgatch.  (Doc. 106.)  On the same date, the Bundrant Defendants
filed an Objection to the Supplemental Declaration of Adam
Furgatch.  (Doc. 107.)

On October 31, 2012, the Court held a hearing on the Motion
for Summary Judgment.  At the hearing, the Court recognized that
the Supplemental Declaration of Adam Furgatch was untimely, but

overruled Defendants' Objections, (Docs. 106, 107), in order to have the benefit of all information relevant to the Summary Judgment Motion.

**BACKGROUND**

**The Purchase Contract**

The Purchase Contract at issue in this case concerned the sale of property located at 82-1021 Kaimalu Place, Captain Cook, Hawaii 96704 ("Property").  In February 2007, Holly Reese ("Reese") obtained a Mortgage to purchase the Property.  Reese's Mortgage was recorded in the State of Hawaii Bureau of Conveyances on February 21, 2007, Document No. 2007-031705.  (Defendants' Summary Judgment Motion SCSF at ¶ 2; Opposition Ex. 2).  Reese defaulted on her mortgage payments and mortgagee Deutsche Bank commenced non-judicial foreclosure proceeding on the Property.  (See Request for Judicial Notice ("Req. Jud. Notice") Ex. 4, Mortgagee's Affidavit.)  On February 14, 2011, Deutsche Bank acquired the Property at a non-judicial foreclosure sale.  (Id.)  After the foreclosure, Deutsche Bank, through its agent, OneWest Services, LLC, offered to sell the Property to Plaintiff Furgatch. (See First Amended Complaint ("FAC") at ¶¶ 19-20; Motion for Summary Judgment at 2.)

On March 31, 2011, Furgatch entered into a written agreement to purchase the Property for a sale price of $715,000.00. (See

5

Ex. A to Defendants' Memorandum of 5/11/12 at PageID #436-48, Doc. 55.)  Furgatch made an initial deposit of $23,000.  (Id.) On April 4, 2011, Furgatch executed an addendum superceding the initial March 31, 2011 agreement.  (Id. at PageID #427-35.)  The April 4, 2011 addendum is the "Purchase Contract" at issue in this case.  The Purchase Contract listed Deutsche Bank's agent, OneWest Services, LLC, as the seller and Adam Furgatch as the buyer. (Id. at PageID #427, "Purchase Contract.")

On April 21, 2011, Furgatch delivered to Defendant OneWest Bank a document questioning OneWest Bank's title to the Property. (FAC at ¶ 21.)  Furgatch's questions concerned an October 2010 Assignment of the Mortgage by MERS, as nominee for IndyMac Bank, FSB, to Deutsche Bank.  (Id.)  The April 21, 2011 document questioned the power of Defendant OneWest Bank to convey good title to Property that had been acquired by Defendant Deutsche Bank.  (Id. at ¶ 19.)

OneWest Bank told Furgatch that the transaction was covered by title insurance, and that unless he promptly closed on the property, OneWest Bank would cancel the Purchase Contract.  (Id. at ¶ 23.)  OneWest Bank also provided Furgatch with a copy of a Limited Power of Attorney recorded on January 18, 2011 in the State of Hawaii Bureau of Conveyances.  (Id. at ¶ 20; see also Req. Jud. Notice Ex. 6, Limited Power of Attorney.)  The Power of Attorney authorized OneWest Bank to act on Deutsche Bank's behalf

6

with regard to numerous mortgage and pooling Agreements,
including the IndyMac INDX Mortgage Trust 2007-AR5 holding the
Mortgage covering the Property.  (Id.)

On May 2, 2011, OneWest Bank sent Furgatch a Notice to
Perform the Purchase Contract. (See Ex. C to Defendants'
Memorandum of 5/11/12, "Notice to Perform," Doc. 55.)

On May 5, 2011, Defendant OneWest Bank cancelled the
Purchase Contract.  (See Ex. C to Defendants' Memorandum of
5/11/12, "Cancellation of Escrow," Doc. 55.)

On May 18, 2011, Furgatch filed an objection to the escrow
cancellation with the escrow company.  (FAC at ¶ 27; Opposition
Ex. 8, Letter to Fidelity National Title & Escrow of Hawaii,
dated May 18, 2011.)

On June 1, 2011, Defendant Deutsche Bank sold the Property
to the Bundrants.  A Limited Warranty Deed transferring the
Property to the Bundrants was recorded with the State of Hawaii
Bureau of Conveyances on June 7, 2011, Doc. No. 2011-089870.
(Req. Jud. Notice Ex. 7, Limited Warranty Deed.)

Furgatch alleges Defendants breached the Purchase Contract
and demands specific performance.  He also claims Defendants
committed fraud by representing they had marketable title to the
Property.  Furgatch maintains that the transfer of the Property
to the Bundrants was fraudulent.  In his Opposition, Plaintiff
for the first time, claims that the Defendants violated an

7

implied covenant of good faith and fair dealing.

Defendants argue they are entitled to summary judgment on claims relating to the Purchase Contract because:

1) The Purchase Contract provided that the agreement could be terminated at any time, in which event Plaintiff's sole recourse would be return of his deposit.  (Defendants' Motion for Summary Judgment SCSF at ¶ 9.)

2) Plaintiff was notified by OneWest Services that if he refused to timely close, pursuant to the terms of the Purchase Contract, the Purchase Contract would be cancelled. (Id. at ¶ 10.)

3) When Plaintiff failed to deposit the balance of the funds due under the Purchase Contract, Defendants cancelled the escrow by notice dated May 5, 2011,[1] and Plaintiff's deposit was released to him.  (Id. at ¶ 11.)

4) The Property was subsequently sold to Charles and Diane Bundrant, and conveyed by a deed recorded in the State of Hawaii Bureau of Conveyances on June 7, 2011.  (Id. at ¶ 12.)

---

[1] The Defendants listed the date as May 6, 2011 in their concise statement, but the actual document is dated May 5, 2011. (Ex. C to Defendants' Memorandum of 5/11/12, "Cancellation of Escrow," Doc. 55.)

**The Non-Judicial Foreclosure Proceedings**

In addition to contesting the cancellation of the Purchase Contract, Furgatch challenges the February 2011 non-judicial foreclosure proceedings where the Property was sold to Deutsche Bank.  On May 11, 2011, Furgatch acquired a quitclaim deed from the previous owner, Holly Reese ("Reese").  (See FAC at ¶ 26.)

On May 19, 2011, Plaintiff acquired a quitclaim deed from Janine M. Swenberg.  (FAC at ¶ 26; Opposition Ex. 1.)  Plaintiff alleges Swenberg was a prior record title holder to the Property, (FAC at ¶ 26), but Swenberg is not listed on the Mortgage documents or the non-judicial foreclosure documents.

Plaintiff alleges he is the "successor in interest" to Reese and Swenberg, and seeks declaratory relief to quiet title to the property.  He also challenges the non-judicial foreclosure proceedings.

Defendants argue they are entitled to summary judgment because:

1) On February 22, 2011, a Mortgagee's Affidavit of Foreclosure Under Power of Sale (the "Mortgagee's Affidavit") was recorded in the State of Hawaii Bureau of Conveyances, as Document No. 2011-031077, indicating that on February 14, 2011, the Property was foreclosed upon by Deutsche Bank at a public auction in the manner prescribed by applicable law.  (See Defendants' Motion for Summary

Judgment SCSF at ¶ 6.)

2) On March 14, 2011, a Mortgagee's Quitclaim Deed Pursuant to Power of Sale (the "Quitclaim Deed") was recorded in the State of Hawaii Bureau of Conveyances, as Document No. 2011-042747.  OneWest Bank, as attorney in fact for foreclosing mortgagee Deutsche Bank, conveyed title to the Property to purchaser Deutsche Bank.  (Id. at ¶ 7.)

3) The Property was sold to Charles and Diane Bundrant.  The limited warranty deed transferring title from Deutsche Bank to the Bundrants was recorded in the State of Hawaii Bureau of Conveyances on June 7, 2011. (Id. at ¶ 12.)


## LEGAL STANDARD

**Summary Judgment**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To defeat summary judgment there must be sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1997).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."

T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809
F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett,
477 U.S. 317, 323 (1986)). The moving party, however, has no
burden to negate or disprove matters on which the opponent will
have the burden of proof at trial.  The moving party need not
produce any evidence at all on matters for which it does not have
the burden of proof. Celotex, 477 U.S. at 325. The moving party
must show, however, that there is no genuine issue of material
fact and that he or she is entitled to judgment as a matter of
law.  That burden is met by pointing out to the district court
that there is an absence of evidence to support the non-moving
party's case. Id.

     If the moving party meets its burden, then the opposing
party may not defeat a motion for summary judgment in the absence
of probative evidence tending to support its legal theory.
Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282
(9th Cir. 1979). The opposing party must present admissible
evidence showing that there is a genuine issue for trial. Fed. R.
Civ. P. 56(e); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044,
1049 (9th Cir. 1995). "If the evidence is merely colorable, or is
not significantly probative, summary judgment may be granted."
Nidds, 113 F.3d at 916 (quoting Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 249-50 (1986)).

     The court views the facts in the light most favorable to the

11

non-moving party. <u>State Farm Fire & Casualty Co. v. Martin</u>, 872 F.2d 319, 320 (9th Cir. 1989). Opposition evidence may consist of declarations, admissions, evidence obtained through discovery, and matters judicially noticed. Fed. R. Civ. P. 56(c); <u>Celotex</u>, 477 U.S. at 324. The opposing party cannot, however, stand on its pleadings or simply assert that it will be able to discredit the movant's evidence at trial. Fed.R.Civ.P. 56(e); <u>T.W. Elec. Serv.</u>, 809 F.2d at 630.  The opposing party cannot rest on mere allegations or denials. Fed. R. Civ. P. 56(e); <u>Gasaway v. Northwestern Mut. Life Ins. Co.</u>, 26 F.3d 957, 959-60 (9th Cir. 1994).  When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact.  <u>Hansen v. United States</u>, 7 F.3d 137, 138 (9th Cir. 1993); <u>see also National Steel Corp. v. Golden Eagle Ins. Co.</u>, 121 F.3d 496, 502 (9th Cir. 1997).

## **ANALYSIS**

Plaintiff's First Amended Complaint ("FAC") asserts the following counts:

Count I:  Declaratory Relief - Quiet Title (against all Defendants)

Count II:  Specific Performance (against Defendants OneWest Bank and Deutsche Bank)

Count III:  Fraud (against Defendants OneWest Bank and
Deutsche Bank)

Plaintiff raises for the first time in his Opposition a
claim that Defendants breached an implied covenant of good faith
and fair dealing.  Plaintiff asks the Court to order Defendants
to provide proof of their legal authority to foreclose.  (FAC at
p. 19 ¶ b.) In an absence of such proof, Plaintiff claims he
should be awarded clear title to the Property.  (Id. at p. 19 ¶
c.)  Alternatively, Plaintiff seeks specific performance under
the Purchase Contract.  (Id. at p. 19 ¶ d.)  Defendants move for
summary judgment on all claims against them.


**I. QUIET TITLE**

### A. Plaintiff Does Not Have Standing to Bring a Quiet Title Action

Defendants contend that Furgatch lacks standing. (Motion at
13-14; Reply at 9-11.)  There is also the question if dismissal
of Plaintiff's quiet title claim is necessary due to lack of
subject matter jurisdiction. Federal courts are required to sua
sponte examine jurisdictional issues.  Chapman v. Pier 1 Imports
(U.S.) Inc., 631 F.3d 939, 954 (9th Cir. 2011) (quoting Bernhardt
v. County of Los Angeles, 279 F.3d 862, 868 (9th Cir. 2002).

13

###### 1.   Article III

"A party invoking federal jurisdiction has the burden of establishing that it has satisfied the 'case-or-controversy' requirement of Article III of the Constitution; standing is a 'core component' of that requirement." D'Lil v. Best W. Encina Lodge & Suites, 538 F.3d 1031, 1036 (9th Cir. 2008) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).  To establish standing, a party must show three things:

> First, the plaintiff must have suffered an injury in fact
> - an invasion of a legally protected interest which is
> (a) concrete and particularized, and (b) actual or
> imminent, not conjectural or hypothetical. Second, there
> must be a causal connection between the injury and the
> conduct complained of - the injury has to be fairly
> traceable to the challenged action of the defendant, and
> not the result of the independent action of some third
> party not before the court. Third, it must be likely, as
> opposed to merely speculative, that the injury will be
> redressed by a favorable decision.

Lujan, 504 U.S. at 560-61 (citations and quotation marks omitted).  Furgatch did not suffer an injury in fact.  Reese's rights or interest in the Property were extinguished when the Mortgagee's Affidavit of Sale was recorded on February 22, 2011. See In re Hoopai, No. 04-02511, 2005 WL 1156091, *3-4 (Bankr. D. Haw. Jan. 12, 2005), aff'd, CV. 05-00186 DAE-KSC, 2005 WL 2864748 (D. Haw. Oct. 14, 2005)("title passes in a non-judicial foreclosure sale when the required affidavit is filed").  A quiet title action cannot lie because it is undisputed that Reese did

14

not attempt to tender the amount due on the loan obligation.  See
Mier v. Lordsman Inc., Civ. No. 10-00584, 2011 U.S. Dist. LEXIS
8484, at *41-42 (D. Haw. Jan. 26, 2011) ("[T]o assert a claim for
quiet title against a mortgagee, a borrower must allege they have
paid, or are able to tender, the amount of the indebtedness.").
Reese did not have any interest in the Property to transfer to
Furgatch via the quitclaim deed executed on May 11, 2011.

Even if we assume Furgatch had a legally protected interest
in the Property, the alleged injury is not fairly traceable to
the challenged actions of the Defendants.  See Big Blue Capital
Partners, LLC v. Recontrust Co., N.A., 6:11-CV-1412-TC, 2012 WL
1870752 (D. Or. May 21, 2012).  In Big Blue Capital, the
plaintiff, an Ohio limited liability company, obtained a
quitclaim deed from homeowners who were in default on their
mortgage payments.  The quitclaim deed was executed on the same
day a non-judicial foreclosure sale of the property was scheduled
to occur.  The plaintiff then filed a lawsuit against the
defendants based on the failure to comply with Oregon's statutory
non-judicial foreclosure procedures.  Id. at *1-2.  The court
held that the plaintiff did not have standing under Article III
and "[t]o the extent that plaintiff suffered an injury, it was
due to plaintiff's own actions in purchasing the Property after
non-judicial foreclosure proceedings had been commenced."  Id. at
*3.

15

Similarly, in this case, it is undisputed that Furgatch knew that Reese defaulted on her Mortgage payments.  Furgatch also knew that Defendants had completed non-judicial foreclosure proceedings in February 2011.  After Defendants terminated the Purchase Contract with Furgatch on May 5, 2011, Furgatch obtained a quitclaim deed from Holly Reese on May 11, 2011.  Furgatch had no involvement in the lending process and is not named in, or a party to, any of the loan or foreclosure documents.  Furgatch does not have standing to bring a quiet title action as a "successor in interest" to Reese.

### 2.  Prudential Standing

In addition to the Article III standing requirements, "[s]tanding doctrine embraces several judicially self-imposed limits on the exercise of federal jurisdiction." <u>Allen v. Wright</u>, 468 U.S. 737, 751, 104 S. Ct. 3315, 3324, 82 L. Ed. 2d 556 (1984).  Prudential limitations on standing preclude a federal court from exercising subject matter jurisdiction even where the Article III requirements have been met.  <u>Oregon Advocacy Ctr. v. Mink</u>, 322 F.3d 1101, 1108 (9th Cir. 2003).  Federal courts generally prohibit a litigant from raising another person's legal rights.  Generalized grievances more appropriately addressed by the legislature should not be adjudicated in federal courts.  Plaintiffs' complaints must be within the zone of

interests protected by the law invoked.   Allen, 468 U.S. at 751.

"As a general rule, a third party does not having standing to bring a claim asserting a violation of someone else's rights." Martin v. California Dep't of Veterans Affairs, 560 F.3d 1042, 1050 (9th Cir. 2009) (citing Powers v. Ohio, 499 U.S. 400, 410, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991)).   A plaintiff may qualify for third party standing if:

> (1) the plaintiff has a concrete interest in the outcome of the dispute; (2) the plaintiff has a close relationship with the person whose rights it is asserting; (3) there must be some hindrance to the person's ability to protect his or her own interests.

Voigt v. Savell, 70 F.3d 1552, 1564 (9th Cir. 1995) (internal quotations omitted).

In this case, Furgatch's quiet title claim is premised on Reese's rights as mortgagor.   Furgatch does not qualify as an exception to the general rule barring third parties from asserting a violation of someone else's rights.   See Big Blue Capital, 2012 WL 1870752, at *3-4; see also HPG Corp. V. Aurora Loan Servs., LLC, 436 B.R. 569, 580 (E.D. Cal. 2010) (corporation did not have third-party standing to challenge lender's non-judicial foreclosure proceedings on behalf of homeowners in default on their loan obligations).

Furgatch does not have standing to assert claims as a "successor in interest" to Reese or Swenberg.   Furgatch does not have standing to bring a quiet title action or to challenge the

17

non-judicial foreclosure proceedings.  Furgatch's claim for quiet title is **DISMISSED** for lack of subject matter jurisdiction.


## II.  SPECIFIC PERFORMANCE OF THE PURCHASE CONTRACT

"It is a basic principle of contract law 'that the promisor is ordinarily bound to perform his . . . agreement according to its terms or, if he . . . unjustifiably fails to perform, to respond in damages for his . . . breach of the contract." Warner v. Denis, 933 P.2d 1372, 1381 (Haw. App. 1997) (citation omitted).

> The remedy of specific performance of contracts is given as a substitute for the legal remedy of damages, or monetary compensation, whenever the legal remedy is inadequate or impracticable. Where the remedy at law is not adequate, equity assumes jurisdiction, to decree specific performance, in order to prevent the travesty of justice involved in permitting parties to refuse performance of their contracts at pleasure by electing to pay inadequate damages for the breach.

Scotella v. Osgood, 659 P.2d 73, 76 n.4 (1983) (quoting 71 Am.Jur.2d Specific Performance § 1 (1973)).  Defendants did not breach the Purchase Contract.  Furgatch has not offered any evidence to establish he is in a position to obtain damages or specific performance.  See id. ("If the vendee is not entitled to a remedy at law, we do not know on what basis he is entitled to specific performance").

### A.    Defendants Did Not Breach the Purchase Contract

As a general rule, the construction and legal effect to be given to a contract is a question of law.  Foundation Int'l, Inc. v. E.T. Ige Constr., Inc., 78 P.3d 23, 30-31 (Haw. 2003) (citation and quotations omitted).  Unambiguous contract terms should be interpreted according to their plain, ordinary, and accepted sense in common speech.  Id. at 31 (citation and quotations omitted).  The determination of whether a contract is ambiguous is a question of law.  Id. at 32 (citation omitted).

To determine whether ambiguity exists Hawaii courts consider whether or not particular words or phrases are uncertain or doubtful in meaning.  Id. at 32-33 (quoting Hokama v. Relinc Corp., 559 P.2d 279, 282 (Haw. 1977) (quoting Bishop Est. Trust v. Castle & Cooke, Inc., 368 P.2d 887, 894 (Haw. 1962)).  A "court should look no further than the four corners of the document to determine whether an ambiguity exists."  Id. at 33 (quoting State Farm Fire & Cas. Co. v. Pacific Rent-All, Inc., 978 P.2d 753, 762 (Haw. 1999) (citing KL Group v. Case, Kay & Lynch, 829 F.2d 909, 916 (9th Cir. 1987)).  A contract term or phrase is ambiguous only if it is capable of being reasonably understood in more than one way.  Wittig v. Allianz, A.G., 145 P.3d 738, 744 (Haw. App. 2006).  Clear language does not become ambiguous as a result of the parties' disagreement over the meaning of a contract or its terms.  Foundation Int'l, Inc., 78

19

P.3d at 33 (citing State Farm Mut. Auto. Ins. Co. v. Fermahin, 836 P.2d 1074, 1077 (Haw. 1992); Hawaiian Ins. & Guar. Co. v. Chief Clerk of the First Circuit Court, 713 P.2d 427, 431 (Haw. 1986)).

"When an ambiguity exists so that there is some doubt as to the intent of the parties, intent is a question for the trier of fact." Foundation Int'l, Inc., 78 P.3d at 33.   "In the absence of any ambiguity, a question of construction arising upon the face of the instrument is for the court to decide." Id.  Under the parol evidence rule, the court may not resort to extrinsic evidence to determine the parties' intent where the contract's language is unambiguous.   Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 839 P.2d 10, 31 (Haw. 1992).

## 1.    The Termination Provision

On April 4, 2011, Furgatch signed a contract to purchase the Property from Defendants.  (Ex. A to Defendants' Memorandum of 5/11/12, "Purchase Contract," Doc. 55.)  Paragraph U of the Purchase Contract expressly provides that the contract could be unilaterally terminated by Defendant Deutsche Bank:

> In the event the Agreement is terminated by Seller
> pursuant to any provision of the Agreement or any other
> addendum executed by the parties, or in the event Seller
> is otherwise unable to or elects not to perform the
> Agreement, Seller's sole liability to buyer will be to
> return the Deposit to Buyer, at which time the Agreement
> shall terminate and neither Seller nor Buyer shall have
> any further obligations, liabilities or responsibilities

20

to one another under the Agreement whatsoever.
(Id. at p. 8 ¶ U "Termination of the Agreement.")

The terms of Paragraph U are clear and unambiguous.  See
Amfac, 839 P.2d at 31.  Plaintiff alleges that "the Cancellation
of Escrow to Adam Furgatch was executed on May 5, 2011 cancelling
the purchase contract, of which the scheduling closing date of
May 7, 2011 did not pass." (Plaintiffs' SCSF at ¶ 5).  Under
Paragraph U, Defendant Deutsche Bank did not breach the contract
when it cancelled the Purchase Contract.


### 2.   The Title Defect Provision

In contesting the Purchase Contract cancellation, Plaintiff
claims in his concise statement that the purchase contract
"allowed Adam Furgatch an automatic extension under paragraph Q,
Title Defects that would allow him 30 days so Seller can resolve
title issues." (Plaintiff's SCSF at ¶ 3).  Plaintiff claims his
submission of his objections raising issues concerning title on
April 25, 2011 extended the closing date 30 days.  (FAC at ¶¶ 21-
22).  Paragraph Q of the Purchase Contract covers "title defects"
as follows:

> In the event that a title defect is discovered by Buyer
> prior to the Closing Date, Buyer shall deliver written
> notice of such defect to Seller and **Seller shall be
> entitled to a thirty (30) day extension of the Closing
> Date to resolve any such title defects or other title
> issues.**  The additional thirty (30) day period shall be
> referred to as the "Extended Closing Period."  If,

within the Extended Closing Period, Seller determines that it is unable or unwilling, in Seller's sole discretion, to resolve such matters, Buyer shall elect to either: (I) take title to the Property in its then state without any reduction in the Sale Price, thereby waiving any and all title objections and any other claims against Seller, or (ii) terminate the Agreement and receive a refund of the Deposit. **Buyer acknowledges and agrees that Buyer's remedy in clause (ii) above shall be Buyer's sole and exclusive remedy against Seller for Seller's election not to remove a title defect and/or inability to deliver clear and insurable title to Buyer at closing.**

(Ex. A to Defendants' Memorandum of 5/11/12, "Purchase Contract" at p. 7 ¶ Q "Title Defects," Doc. 55)(emphasis added).

Paragraph Q clearly states that the thirty day extension period to resolve title defects was in Seller's sole discretion. Under the contract, Furgatch's sole remedy was to terminate the Agreement and receive a refund of the Deposit.  The contract language is unambiguous.  See Amfac, 839 P.2d at 31.  Plaintiff's argument that he had a right to extend the closing date thirty days fails as a matter of law.  Plaintiff was on notice that Defendant OneWest was unwilling to address the alleged title defects.  In response to Furgatch's April 25, 2011 title defect report, Defendant OneWest Bank stated "that title insurance would cover his investment, and that unless Plaintiff promptly closed on the Property that Defendant [OneWest Bank] would cancel the purchase contract."  (FAC at ¶ 23.)  On May 2, 2011, Plaintiff Furgatch received a Notice to Perform by the scheduled closing date of May 7, 2011.  (Plaintiffs' SCSF at ¶ 4; Defendants'

22

Motion for Summary Judgment SCSF at ¶ 10.)  Plaintiff fails to
cite any facts or evidence raising a genuine issue of material
fact as to Defendant's unilateral right to terminate the Purchase
Contract pursuant to Paragraph U.

### 3.    The Release Provision

The Purchase Contract specifically limited Furgatch's remedy
to return of the deposit.  (Ex. A to Defendants' Memorandum of
5/11/12 , Purchase Contract at p. 8 ¶ U "Termination of the
Agreement," Doc. 55; Id. at p. 7 ¶ Q "Title Defects.")

The Purchase Contract also contained a release clause that
states:

> Buyer hereby releases and agrees to indemnify, hold
> harmless and forever discharge Seller, as owner of the
> Property, and its affiliates, officers, employees,
> agents, successors and assigns, from any and all claims,
> liabilities, or causes of action of any kind that Buyer
> may now have or may have at any time in the future
> arising out of the Agreement . . . . Buyer further
> expressly waives the (I) remedy of specific performance
> on account of Seller's default under the Agreement for
> any reason, and (ii) any right otherwise to record or
> file a lis pendens or a notice of pendency of action or
> similar notice against all or any portion of the
> Property.

(Id. at p. 9 ¶ W "Release.")

Parties may contractually limit their remedies to the
seller's return of the buyer's deposit.  Hele Ku KB, LLC v. BAC
Home Loans Servicing, LP, CIV. 11-00183 LEK, 2012 WL 1987165, at
*15 (D. Haw. May 31, 2012), reconsideration denied (July 30,

23

2012).  It is undisputed that Plaintiff Furgatch executed the Purchase Contract containing the release provision on April 5, 2011.  (Id.)

## B.  The Escrow Instructions to the Escrow Agent Do Not Affect the Express Terms of the Purchase Contract

For this first time in his Opposition, Plaintiff alleges that "[t]he Escrow Instructions PARA 5 required cancellation to be bilateral."[2]  (Plaintiff's SCSF at ¶ 7.)  The Escrow Instructions are irrelevant as to whether Defendant Deutsche Bank breached the Purchase Contract because the Escrow Instructions are directed at the parties' Escrow Agent.  (See Opposition Ex. 3, Escrow Instructions).  Paragraph 6 of the Escrow Instructions state:

> RIGHT OF CANCELLATION
> Any principal instructing you to cancel this escrow shall file notice of cancellation in your office in writing. You shall, within two (2) working days thereafter, deliver one copy of such notice to each of the other principals at the addresses state in this escrow. Unless written objection to cancellation is filed in your office by a principal within fifteen (15) days after date of such mailing, you are authorized to comply with such notice and demand payment of your cancellation charges. If written objection is filed, you are authorized to hold all money and instruments in this escrow and take no further action until otherwise directed, either by the principals' mutual instructions, or by final order of a court of competent jurisdiction.

_____

[2]  Paragraph 5 of the Escrow Instructions is entitled "Authorization to Furnish Copies." Plaintiff appears to refer to Paragraph 6 which governs the "Right of Cancellation." (See Opposition Ex. 3.)

24

(Id. at ¶ 6, PageID# 671.)

On May 5, 2011, Defendants filed a notice of cancellation with the escrow agent pursuant to the Escrow Instructions (Defendants' Motion for Summary Judgment SCSF at ¶ 10; Ex. C to Defendants' Memorandum of 5/11/12, "Notice of Cancellation," Doc. 55) Plaintiff misconstrues Paragraph 6 of the Escrow Instructions as requiring a bilateral cancellation between Plaintiff and Defendant.  The Escrow Instructions were contractual guidelines for the escrow agent, not for the seller or purchaser.  Under the Escrow Instructions, "[i]f written objection is filed, you [the escrow agent] are authorized to hold all money and instruments in this escrow and take no further action until otherwise directed, either by the principals' mutual instructions, or by final order of a court of competent jurisdiction." If anything, Plaintiff alleges that the escrow agent violated the Escrow Instructions by promptly returning his deposit.


**C.   Furgatch Was Not a Ready, Willing, and Able Purchaser**

Assuming, *arguendo*, that the Defendants breached the Purchase Contract, Plaintiff has not shown he was a ready, willing, and able purchaser.  "Where a purchaser seeks specific performance of a land purchase contract, the general rule provides that he must show that (1) he paid the purchase price or

25

tendered it to the seller or (2) he has a good excuse for his failure to so pay or tender and has the readiness, willingness, and ability to pay." <u>PR Pension Fund v. Nakada</u>, 809 P.2d 1139, 1144-45 (Haw. App. 1991).

Furgatch complains that after he raised questions concerning title, OneWest Bank continued to want him to close by May 7, 2011.  He did not want to close without OneWest addressing his title concerns.  (FAC at ¶ 25.)  Furgatch knew that he was purchasing a Property recently foreclosed upon by a bank.  The Purchase Contract clearly stated both Buyer and Seller's options if a title defect issue arose.  (Ex. A to Defendants' Memorandum of 5/11/12, Purchase Contract at p. 7 ¶ Q "Title Defects," Doc. 55.)  Furgatch did not tender the purchase price or demonstrate a good reason for failure to tender.

### D.    Specific Performance Is Not an Available Remedy

Even if Defendants had breached the Purchase Contract and Furgatch was a ready, willing, and able purchaser, specific performance is not an available remedy. The Property was sold to the Bundrants.  It cannot be conveyed to Plaintiff.

But, as the evidence shows, Defendants did not breach the Purchase Agreement. Defendants' Motion for Summary Judgment as to specific performance of the Purchase Agreement is **GRANTED.**

### III.   FRAUD

To prevail on a fraud claim under Hawaii law, a Plaintiff must prove that "the defendant made false representations of material fact, intended to induce plaintiff to act, the representations were made with knowledge of, or reckless disregard for, their falsity, and the plaintiff justifiably relied upon those false representations to his detriment." Bulgo v. Munoz, 853 F.2d 710, 716 (9th Cir. 1988).

#### A.   Representations of Marketable Title

Following the non-judicial foreclosure sale, Defendant Deutsche Bank held title to the Property.  (See Req. Jud. Notice Ex. 4, Mortgagee's Affidavit of Foreclosure Under Power of Sale; Req. Jud. Notice Ex. 5, Mortgagee's Quitclaim Deed Pursuant to Power of Sale.)  It is undisputed that Defendant Deutsche Bank had title insurance to cover any title defects.  (See FAC at ¶¶ 23-24).  Defendant's representations that they had marketable title to the Property when it entered into the Purchase Contract with Furgatch were not false.

#### B.   Transfer of the Property to the Bundrants

Plaintiff alleges that Defendant Deutsche Bank's sale of the Property to the Bundrants was fraudulent because the Purchase Contract was still pending, (FAC at ¶ 73), and the sale was "for

27

the express purpose of causing harm and damage to the plaintiff."
(Id. at ¶ 75).  Defendant OneWest Bank cancelled the Purchase
Contract on May 5, 2011.  The Purchase Contract provided the
Seller with unilateral termination rights.  The Limited Warranty
Deed conveying the Property from Deutsche Bank to the Bundrants
was executed on June 1, 2011 and recorded on June 7, 2011.  (Req.
Jud. Notice Ex. 7, Limited Warranty Deed).  The sale of the
Property to the Bundrants occurred after the Purchase Contract
was terminated.  Plaintiff does not raise a genuine issue of
material fact that the transfer to the Bundrants was fraudulent.

Summary Judgment is **GRANTED** to Defendants on the fraud
claims.


**IV.  IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

For the first time in his Opposition, Plaintiff raises a
claim that Defendants breached an implied covenant of good faith
and fair dealing.  (Opposition at 27-29.)  Defendants state that
this new cause of action must be disregarded by the Court, citing
Shahata v. W Steak Waikiki, LLC, 721 F.Supp.2d 968 (D. Haw.
2010).  In Shahata, the court rejected "the bare allegations of
fraud" the Plaintiff made for the first time in opposition to a
summary judgment motion.  721 F.Supp.2d at 988 n.18 (citing
Pickern v. Pier I Imports (U.S.), Inc., 457 F.3d 963, 968-69 (9th
Cir. 2006).

In the <u>Best Place</u> case, the Hawaii Supreme Court recognized a covenant of good faith and fair dealing. <u>Best Place, Inc. v. Penn. Am. Ins. Co.</u>, 920 P.2d 334, 345 (Haw. 1996). "[P]arties to a contract have a duty of good faith and fair dealing in performing contractual obligations. <u>Id.</u> (citing <u>Hawaii Leasing v. Klein</u>, 698 P.2d 309, 313 (Haw. App. 1985)). "Good faith performance emphasizes faithfulness to an agreed common purpose with the justified expectations of the other party." <u>Hawaii Leasing</u>, 698 P.2d at 313 (internal quotations omitted).

Furgatch alleges that "Defendant Cancelled [sic] the Escrow on May 5, 2011 for buyers 'failure to perform' even before the self-imposed close of escrow date of May 7, 2011." (Opposition at 28.) He argues that "[t]he act of hastily cancelling the escrow prior to the deadline is a breach that clearly demonstrates a violation of the implied covenant of Good Faith and Fair Dealing." (<u>Id.</u>)

The Purchase Contract directly addressed title defects in Paragraph Q. The Purchase Contract stated that the Buyer's sole and exclusive remedy in the event that a title defect is discovered shall be either "take title to the Property in its then state without any reduction in the Sale Price, thereby waiving any and all title objections and any other claims against Seller" or "terminate the Agreement and receive a refund of the Deposit." (Ex. A to Defendants' Memorandum of 5/11/12, Purchase

Contract at p. 7 ¶ Q, Doc. 55.)  On April 21, 2011, Furgatch notified OneWest Bank of his questions concerning Defendants' title to the property.  (FAC at ¶ 21.)  OneWest Bank responded that it had proper title and presented evidence that it had the power to convey the Property pursuant to a Power of Attorney signed by Deutsche Bank.  (FAC at ¶ 20.)  OneWest Bank also represented that title insurance would cover Furgatch's investment and that, unless Furgatch promptly close on the Property, OneWest would cancel the Contract.  (FAC at ¶ 23.) Plaintiff admits he was not satisfied with these assurances. (FAC at ¶ 25.)  Defendants did not violate the implied covenant of good faith and fair dealing when it cancelled the Purchase Contract on May 5, 2011.  Furgatch was on notice that Defendants did not plan to take any further action regarding Furgatch's title concerns and would cancel the Purchase Contract if Furgatch did not perform.  Pursuant to the Purchase Contract, Defendants had the right to unilaterally terminate the contract on May 5, 2011.  In a letter dated as late as May 18, 2011, Furgatch's counsel represented that Furgatch was still hesitant to purchase the Property based on his title concerns.  (Opposition Ex. 8, Letter to Fidelity National Title & Escrow of Hawaii, Inc. dated May 18, 2011.)

Even if Furgatch had properly raised a claim of breach the implied covenant of good faith and fair dealing in his Complaint

he would not have prevailed.   There is no material issue of fact present.   The Defendants did not breach the implied covenant of good faith and fair dealing.   Defendants are **GRANTED** summary judgment on Plaintiff's improperly raised claim of breach of the implied covenant of good faith and fair dealing.

## CONCLUSION

Plaintiff does not have standing to bring a quiet title claim or to challenge the non-judicial foreclosure proceedings. Plaintiff's quiet title claim is **DISMISSED** for lack of jurisdiction.

Defendants did not breach the Purchase Contract.   Plaintiff is not entitled to specific performance.   Plaintiff has not identified or provided evidence of fraudulent misrepresentations or acts committed by the Defendants.   Defendants did not violate the implied covenant of good faith and fair dealing.

//

//

//

//

//

//

Defendants Motion for Summary Judgment (Doc. 77) is **GRANTED**.

Case to be closed.


         IT IS SO ORDERED.

         Dated: January 4, 2013, Honolulu, Hawaii.



                                        /S/ Helen Gillmor
         _____
                          Helen Gillmor
                          United States District Judge


_____

FURGATCH V. ONEWEST BANK, ET AL.; CIV. NO. 11-00363 HG-KSC; **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. 77)**